## O'Brien *v.* O'Brien Steel Construction Company (et al., Appellants).

Argued October 2, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*James M. Carter,* with him *Marjorie H. Matson,* for appellants.

*Frank C. Carroll,* with him *McIlvaine & Carroll,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, November 12, 1970:

We are asked in this appeal to reverse a $10,000 judgment for plaintiff in an assumpsit action because of the asserted illegality of the underlying contract.

Plaintiff, William G. O'Brien, Jr., is the brother of defendants Helen, James, John and Joseph O'Brien, and Sue O'Brien Miller. All are children of William and Ada O'Brien, both now deceased. The principal sum was found to be due plaintiff as a third party donee beneficiary of a contract between defendants and their parents.

William, Jr.'s chief witness was his brother James who recounted a meeting at his father's home in February of 1951 attended by all members of the immediate family save for William, Jr. According to James, his parents at that time expressed their desire for financial security during the remainder of their lives and a concern for what William, Sr. thought would be an onerous tax burden on their estates if he and Ada were to die owning their share of stock in the O'Brien Steel Construction Company, the family business. James testified that it was orally agreed that William, Sr. and Ada would transfer their stock in the family corporation to defendants. In return, defendants agreed to furnish a $600 monthly annuity to their parents and, in addition, promised to pay William, Jr. the $10,000 death benefit of an insurance policy upon the life of William, Sr. which was owned by and made payable to the corporation. Since William, Jr. had not been active in the management of the corporation for some time, he was to receive the future $10,000 cash payment in lieu of a share of his parents' stock.[1]

Sue, John and Joseph for their part denied that such a meeting had ever occurred or that such an oral agreement had been consummated or even discussed. Nevertheless, William, Sr. and Ada did transfer their stock to defendants,[2] and a written support agreement similar in terms to the alleged oral agreement was executed.

---

[1] Plaintiff introduced an entry from a family history in the handwriting of William, Sr. which tended to confirm James' testimony.

[2] For the purpose of controverting James' testimony, defendants offered evidence tending to prove that their parents' stock had been transferred to them in January of 1951, more than one year *prior* to the claimed oral agreement. However, plaintiff's evidence to the contrary was apparently persuasive to the jury.

The jury, apparently crediting the testimony of James, returned a verdict for plaintiff. Defendants' motion for new trial was denied, and the present appeal ensued.[3]

Defendant-appellants now and for the first time contend that the contract founding William, Jr.'s claim to the insurance proceeds had an illegal purpose and is, for that reason, unenforceable.[4] Specifically, they assert that the stock transfer, the annuity, and the assignment of the future interest in the insurance policy were inextricably bound to an unlawful scheme to commit tax fraud upon the United States. In support of this conclusion, we are urged to consider the following evidence: William, Sr.'s federal gift tax return for 1951 contained no reference to the gift of the future interest in the life insurance to William, Jr. William, Sr. and Ada filed gift tax returns on March 15, 1952, for the years 1950 and 1951. These returns report gifts of a portion of the stock to defendants in the first month of each of the two years. The stock certificates themselves and the corporate stock transfer records, both personally prepared by James, conform to the tax returns. James testified however, that no stock was actually transferred until after the family meeting in February of 1951.

Appellants offer an elaborate exposition of federal tax law, which, in their view, demonstrates that the failure to report the gift of the insurance proceeds and the false reporting of the stock transfer constitute various criminal violations of the Internal Revenue Code.

---

[3] Defendant James O'Brien appeared without counsel and testified at trial. Defendant Helen O'Brien did not appear at trial. This appeal is prosecuted only by John and Joseph O'Brien and Sue O'Brien Miller.

[4] The question of the illegality of a contract may be raised for the first time on appeal. *Waychoff v. Waychoff*, 309 Pa. 300, 163 Atl. 670 (1932).

We need not, however, determine the correctness of this conclusion. Even assuming *arguendo* that tax fraud was present in this case, it would not follow that the contract is unenforceable.

According to appellants, the applicable general rule is contained in the Restatement of Contracts §512 (1932) : "A bargain is illegal within the meaning of the Restatement of this Subject if either its formation or its performance is criminal, tortious, or otherwise opposed to public policy." It is further contended that the specific illegality involved in the instant case is covered by the Restatement of Contracts §548(1) which provides: "A bargain in which either a promised performance or the consideration for a promise is concealing or compounding a crime or alleged crime is illegal." Finally, we are referred to the Restatement of Contracts §580 which declares that any bargain in violation of a statute is illegal.

While the contract law of this Commonwealth in large measure parallels these principles of the Restatement of Contracts, see, e.g., *Lamb v. Condon*, 276 Pa. 544, 549-550, 120 Atl. 546, 547 (1923), they are not applicable to the facts before us. The "bargain" here at issue was neither criminal, tortious nor repugnant to public policy in its formation or performance. The agreement of William, Sr. and Ada to transfer their stock was, in itself, wholly legal. Equally innocent were appellants' return promises to furnish an annuity and to pay the insurance proceeds to their brother. Nor does any special alchemy transform the aggregation of these promises into an illegal bargain. No party to the contract promised to conceal or compound any crime or to violate any statute. No crime was in fact committed or compounded and no statute was in fact violated by any acts of the parties performed in fulfillment of their respective contractual obligations. We

are presented at most with the unilateral wrongdoing of parties on one side of the contract, giving rise to possible federal tax and criminal liability.[5] If there was indeed such wrongdoing, it was not required in any way by the contract. No sound public policy suggests that we hold a contract unenforceable merely because one of the parties misreports or fails to report the transaction to the appropriate taxing authority.

The rule of law that *does* control the disposition of this case is that a claim connected with an illegal contract is enforceable if the plaintiff does not require the illegal transaction to establish that claim. *First National Bank v. Baer*, 277 Pa. 184, 120 Atl. 815 (1923). Here, William, Jr.'s right to the $10,000 was made out by a wholly legal and valid contract, without recourse to the collateral illegality asserted by appellants. There is no reason to deny his recovery.

The judgment of the Court of Common Pleas is affirmed.

Mr. Justice COHEN concurs in the result.

---

[5] Appellants also claim that James aided and abetted his parents' tax evasion scheme by falsely dating the stock certificates and the corporate stock transfer records. But even if this be so, James was not acting pursuant to the contract.