EXCHANGE INTERNATIONAL LEAS-
ING CORPORATION, an Illinois
Corporation, Plaintiff,

v.

CONSOLIDATED BUSINESS FORMS
COMPANY, INC., a Pennsylvania
Corporation, Defendant,

v.

PHILLIPS BUSINESS SYSTEMS, INC., a
Delaware Corporation and Northern
Leasing and Financial Corp., an Ohio
Corporation, Third Party Defendants,

v.

BENCHMARK SYSTEMS, an Ohio Cor-
poration, Fourth Party Defendant.

Civ. A. No. 76–1339 H.

United States District Court,
W. D. Pennsylvania.

Nov. 3, 1978.

---

Donald S. Hershman, Joseph & Hershman, P. C., Pittsburgh, Pa., for plaintiff Exchange International Leasing Corp.

---

Gary H. McQuone, Ruffin, Hazlett, Snyder, Brown & Jack, Pittsburgh, Pa., for defendant Consolidated Business Forms Co., Inc.

Paul H. Titus, Kaufman & Harris, Pittsburgh, Pa., for third party defendants.

## OPINION

DIAMOND, District Judge.

Plaintiff, Exchange International Leasing Corporation, (hereinafter Exchange) brought the instant suit to recover rental payments from defendant, Consolidated Business Forms, (hereinafter Consolidated) arising out of defendant's leasing of a Phillips business computer. Plaintiff is the named lessor of said computer by virtue of an assignment from the original lessor, third party defendant, Northern Leasing and Financial Corporation, (hereinafter Northern).

It has been established through the ruling on a prior motion for summary judgment filed by plaintiff that the aforesaid assignment conferred upon plaintiff the status of a holder in due course under Section 3–302 of the Uniform Commercial Code (hereinafter U.C.C.), 12A P.S. § 3–302 and that the defendant's only plausible defense was misrepresentation under Section 3–305(2)(c) of the U.C.C., 12A P.S. § 3–305(2)(c). The matter now before the court is plaintiff's second motion for summary judgment in which it claims that no genuine issue of misrepresentation exists. For the reasons set forth below, we conclude that there is no genuine issue of a material fact regarding the misrepresentations defense and that the defendant was not the victim of misrepresentation within the meaning of § 3–305(2)(c) and, therefore, grant the motion.

The facts relevant to the disposition of this matter may be summarized as follows: After several weeks of discussion and correspondence with fourth party defendant, Benchmark Systems, Inc. (hereinafter Benchmark), a Pittsburgh area sales representative for third party defendant, Phillips Business Systems, Inc., (hereinafter Phillips), Consolidated decided to acquire a Phillips computer. Because Consolidated was not in a position to purchase the $25,000.00 computer outright, a 66-month lease-purchase was arranged. Northern Leasing, not Phillips or Benchmark, was the lessor of the equipment under a lease signed on November 22, 1974. The lease contained a common waiver-of-defense clause, which stated essentially that rental obligations were not conditioned on the fulfilling of any express or implied warranties. Northern assigned the lease to Exchange in April, 1975. Exchange subsequently instituted this suit alleging that shortly after the assignment Consolidated defaulted in its rental payments.

Consolidated filed an answer in which it claimed that its rental obligations had been excused by the breach of certain performance guarantees made to it by Benchmark during negotiations. In ruling on an earlier motion for summary judgment by Exchange, however, Judge Knox of this court ruled that this defense was not available to Consolidated, since Exchange was a holder in due course within the meaning of Section 3–302 of the U.C.C. and that therefore, Consolidated could only avail itself of the defenses enumerated in Section 3–305 of the U.C.C. Of those 3–305 defenses, the one contained in subsection (2)(c) dealing with misrepresentation was raised by Consolidated. Exchange had also sought summary disposition of the 3–305(2)(c) defense, but Judge Knox denied summary judgment in that regard for the reason that the record was insufficient to permit the conclusion that no genuine issue of material fact existed as to the 3–305(2)(c) claim.

Following the denial of summary judgment, Exchange incorporated into the record the deposition of one James E. Spohn, Chairman of the Board of Consolidated.[1] Spohn was the Consolidated representative who negotiated for the acquisition of the Phillips computer and who also signed the lease with Exchange's predecessor-in-inter-

---

1. Mr. Spohn's deposition was originally filed in the Court of Common Pleas of Allegheny County, Pennsylvania, Civil Action No. GD 77–23973.

est, Northern. Exchange then filed the instant motion for summary judgment, contending that Spohn's deposition sufficiently augmented the record to remove any genuine issue of fact concerning misrepresentation under 3–305(2)(c).

In order to rule on the instant motion we must consider (1) the meaning of "misrepresentation" under 3–305(2)(c); (2) the factual basis in support of the allegations of misrepresentation relied on by Consolidated; and (3) whether or not there exists a genuine issue of a material fact which if true would constitute a defense.

Turning first to the meaning of "misrepresentation", 3–305(2)(c) states:

"To the extent that a holder is a holder in due course he takes the instrument free from

.    .    .    .    .

"(2) all defenses of any party to the instrument with whom the holder has not dealt except

.    .    .    .    .

"(c) such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms .  . "

Thus, to establish the defense, one must not only have had no knowledge of a document's character or essential terms, but also have had no "reasonable opportunity" to acquire such knowledge. Comment 7 to 3–305 elaborates by stating that in determining what constitutes a "reasonable opportunity" factors such as the age, intelligence, and business experience of the signator, his ability to read English, and the representations made to him and his reason to rely on them are to be considered.[2]

The reported Pennsylvania decisions interpreting 3–305(2)(c) while few in number are nonetheless uniform in holding that only fraud in the factum, as opposed to fraud in the inducement, is a defense under 3–305.[3] This view is in accord with comment 7 and also the view expressed by certain scholars in the area.[4]

As comment 7 notes, the classic example of fraud in the factum is that of a person who is tricked into signing a note on the pretense that it is a mere receipt of some sort. Pennsylvania is apparently hesitant to expand the defense and afford relief to less obvious victims. For example, in *Reading Trust Co. v. Hutchison,* 35 D.&C.2d 790 (1964), defendants agreed to permit a company to install and demonstrate a water softening machine in defendant's home in

---

**2.** The complete text of comment 7 is as follows:

"7. Paragraph (c) of subsection (2) is new. It follows the great majority of the decisions under the original Act in recognizing the defense of 'real' or 'essential' fraud, sometimes called fraud in the essence or fraud in the factum, as effective against a holder in due course. The common illustration is that of the maker who is tricked into signing a note in the belief that it is merely a receipt or some other document. The theory of the defense is that his signature on the instrument is ineffective because he did not intend to sign such an instrument at all. Under this provision the defense extends to an instrument signed with knowledge that it is a negotiable instrument, but without knowledge of its essential terms.

"The test of the defense here stated is that of excusable ignorance of the contents of the writing signed. The party must not only have been in ignorance, but must also have had no reasonable opportunity to obtain knowledge. In determining what is a reasonable opportunity all relevant factors are to be taken into account, including the age and sex of the party, his intelligence, education and business experience; his ability to read or to understand English; the representations made to him and his reason to rely on them or to have confidence in the person making them; the presence or absence of any third person who might read or explain the instrument to him, or any other possibility of obtaining independent information; and the apparent necessity, or lack of it, for acting without delay.

"Unless the misrepresentation meets this test, the defense is cut off by a holder in due course."

**3.** We have found three Pennsylvania decisions on point, none of which are of the appellate level. See: *Reading Trust Co. v. Hutchison,* 35 D.&C.2d 790 (1964); *Equitable Discount v. Fischer,* 12 D.&C.2d 326 (1957); *First National Bank of Philadelphia v. Anderson,* D.&C.2d 661 (1956).

**4.** See White and Summers, "Uniform Commercial Code" 1972, West Publishing Co., p. 487.

order to promote sales to defendants' neighbors. The defendants signed a document which was represented by the company to be a bond securing against damage to the equipment. In reality, the document was a note securing the purchase price of the equipment. The court refused to hold that defendants had been the victims of misrepresentation within the purview of 3–305(2)(c), for the reason that defendants had established no basis from which it could be concluded that they had reason to rely on the statements of the company's representative and, that they had the opportunity, time, and ability to read the document before signing it. For a contra view, see *American Plan Corp. v. Woods,* 16 Ohio App.2d 1, 240 N.E.2d 886 (1968).

■ With the foregoing in mind we consider the specific misrepresentations relied on by Consolidated. In its brief Consolidated contends that "Mr. Spohn was precluded from examining the contents of the agreement by the representations made to him" by employees of Phillips and Benchmark. Although defendant's brief does not disclose the specifics of those representations, Spohn's deposition indicates that they were in the nature of assurances that the computer would be removed with a complete refund if it failed to function properly. Spohn testified that the Benchmark representative with whom he was most actively involved, the person who suggested the lease arrangement and who was present for its signing, one Steve O'Connor, "assured me at all times that the guarantee was in force." (DT 26)[5] Spohn referred to two other statements "guaranteeing" the computer, both of which were made shortly after he initially approached Benchmark in regard to a possible purchase. One statement was made orally at a trade show by the president of Benchmark (DT 8), while the other was contained in a promotional brochure signed by another officer of Benchmark (DT 33).

Assuming without deciding that the statements referred to by Spohn could form the basis of a misrepresentation, nevertheless the court is of the opinion that no genuine issue exists as to the presence of a 3–305(2)(c) defense. For, even if it be true that Spohn did not have actual knowledge of the essential terms of the lease,[6] it can hardly be said that he lacked a "reasonable opportunity" to acquire that knowledge— an essential element of a 3–305(2)(c) defense. Spohn testified unequivocally that O'Connor in no way prevented him from reading the instrument before he signed it (DT 16), that he could have read the document in its entirety had he so desired (DT 17), and that he was not busy or otherwise distracted at the time of execution (DT 17). Spohn further testified that he read part of the lease but simply chose not to read the "fine print" because he had trust in O'Connor (DT 17).

The court notes that while the waiver-of-defenses clause was not in bold-face print, it was not inconspicuously buried in the document either. It appeared on the cover page of the lease immediately between the identification-of-the-transaction and the signatory portions of the instrument. The court further observes that there were three "fine print" clauses on the cover sheet and that, of the three, the waiver-of-de-

---

5. The numbers in parenthesis refer to page numbers from the Spohn deposition filed originally in the Court of Common Pleas of Allegheny County, Pennsylvania, Civil Action No. GD 77–23973.

6. Several times throughout the course of his deposition Spohn states that he did not know the character of the document either. He indicates that he was under the impression that it constituted an installment purchase arrangement between Consolidated and Phillips. It is clear from the deposition, however, that such an erroneous impression was not the result of a misrepresentation by Benchmark or Phillips. For in all their communications with Spohn, both Benchmark and Phillips termed the arrangement a lease and nothing more. Finally, Spohn admits that he nonetheless "assumed" it was really a purchase from Phillips, since he was under the impression that an enforceable guarantee could exist only if the transaction were a purchase (DT 26, 27). Thus, it is clear that the only matter of which Spohn may have been misinformed or misled was of an "essential term"; namely, continued viability of the Phillips warranty.

fense clause was the most prominent. Considering all of these factors, the court concludes that there is no genuine issue of fact concerning the reason for Spohn's ignorance of the essential character and terms of the instrument which he executed on behalf of Consolidated. It was purely a matter of his choice not to read that which was readily and conveniently available for him to read.

Consolidated argues for a contrary result by emphasizing that portion of comment 7 which states that in determining what constitutes a "reasonable opportunity" one is to consider the representations made to the signator and "his reason to rely on them or to have confidence in the person making them." The court does not find this argument persuasive because it simply ignores the other facts to be considered in determining whether one had reasonable opportunity to obtain knowledge of the instrument's character and essential terms. When these other factors; viz, age, intelligence, business experience, ability to read the document, necessity for acting speedily, are considered in the light of Spohn's deposition it is clear that there is no legal justification for the blind reliance which Spohn contends he had on the statements of O'Connor.

An appropriate Order will be entered granting plaintiff's motion for summary judgment.