KEY BANK, Formerly Bankers Trust Company of Western New York

v.

Stuart L. CRAWFORD, et al.

Civ. A. No. 83–1549.

United States District Court, E.D. Pennsylvania.

Jan. 23, 1985.

Wilbur Greenberg, Philadelphia, Pa., for defendant Kutner Buick in interpleader action.

Plaintiff Key Bank dismissed from interpleader action.

Fred Greenberg, Philadelphia, Pa., for defendant Crawford in interpleader action.

## OPINION

JOSEPH S. LORD, III, Senior District Judge.

### Findings of Fact

1. This interpleader action was brought by the Bankers Trust Company of Western

New York, now called Key Bank, in the Western District of New York to determine whether Crawford or Kutner Buick, both defendants in interpleader, is entitled to the proceeds of a cashier's check in the amount of $50,023.00. The action was transferred to the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1404(a), and the sum with interest has been deposited in the registry of the court.

2. Key Bank was dismissed as a party to this action on May 21, 1984. Chalfont Industries ("Chalfont") was also an original party, but has submitted no claim in this proceeding.

3. Defendant Stuart Crawford ("Crawford") is a citizen of the State of New York.

4. Defendant Kutner Buick is organized under the laws of Pennsylvania and has its principal place of business in Pennsylvania.

5. Crawford first visited Chalfont in mid-December, 1981.

6. Between mid-December, 1981 and mid-February, 1982, Crawford frequently contacted employees of Chalfont to discuss the possibility of his entering into a "Distribution Agreement" to sell its product, Stop-A-Flat, in North Carolina.

7. Between mid-December, 1981 and mid-February, 1982, various employees of Chalfont told Crawford that the company was in sound financial condition, that race car driver Bobby Unser was Chalfont's national spokesperson, that an independent testing laboratory called the National Laboratory for Transportation Safety had tested Chalfont's product, and that the area in which Crawford wished to distribute the product was "virgin territory". Each of these statements was untrue at the time it was made.

8. In January, 1982, Crawford had his attorney, Martin Idzik, redraft the Distribution Agreement to clarify the "no-risk" buy-back provision which Crawford had discussed with employees of Chalfont.

9. On February 10, 1982, Crawford took the revised agreement his attorney had drafted to Chalfont's office. While Craw-

ford waited, Chalfont employee Dennis Mason took the agreement Crawford brought with him to Jerome Kutner, president of Chalfont. Mason then returned to Crawford with a document Kutner had signed, opened it to the signature page, and Crawford signed without reading the document although he had ample opportunity to do so. The agreement Crawford and Kutner signed was not the same one Crawford had brought with him and it did not contain a "no-risk" buy-back provision.

10. On February 10, 1982, Crawford drew a check for $42,023.00 payable to Chalfont Industries.

11. Chalfont endorsed this check over to Kutner Buick, Inc. but Crawford stopped payment on the check.

12. After further discussions with Jerome Kutner, Crawford instructed his son to send a $50,023.00 cashier's check, dated February 17, 1982, to Chalfont by registered mail.

13. Crawford had knowledge of the character and essential terms of the instrument he instructed his son to send to Chalfont.

14. After the check was sent, Crawford had renewed misgivings about the venture. He attempted unsuccessfully to stop the check. On Monday, February 22, 1982, he went to the offices of Chalfont and informed Dennis Mason that he wanted to pick up the check when it arrived in the mail. Mason agreed to give Crawford the check, but informed him that it had not yet arrived. Crawford waited in Chalfont's offices again on Tuesday, February 23, 1982, but was again informed that the check had not arrived.

15. In fact, the check had arrived at Chalfont's offices on February 22, 1982, and Chalfont immediately endorsed it over to Kutner Buick.

16. Kutner Buick gave full and valid consideration for the cashier's check Chalfont endorsed over to it.

17. The president of Kutner Buick was and is Jules Kutner, the father of Jerome Kutner.

18. On many occasions, Jules Kutner and/or Kutner Buick lent large sums of money to Chalfont Industries and cashed checks for Chalfont Industries.

19. On March 4, 1982, Chalfont filed a petition in the United States Bankruptcy Court for the Eastern District of Pennsylvania under Chapter 11 of the Bankruptcy Act. The proceeding was converted to a liquidation proceeding pursuant to Chapter 7 on August 8, 1982.

20. There is no evidence that Jules Kutner or any employee of Kutner Buick lacked good faith in accepting the assignment of the $50,023.00 cashier's check.

21. There is no evidence that Jules Kutner or any employee of Kutner Buick knew or had reason to know of Crawford's attempts to stop or reclaim the cashier's check.

22. There is no evidence that Jules Kutner or any employee of Kutner Buick knew or had reason to know of the occurrence or substance of any conversations between Crawford and employees of Chalfont.

23. There is no evidence that the failure of Jules Kutner or any employee of Kutner Buick to make any inquiries about the cashier's check stemmed from any desire to evade knowledge of Crawford's efforts to stop the check.

24. There is no evidence that Jules Kutner or any employee of Kutner Buick knew or had reason to know that the redrafted agreement containing the "buy-back" clause had been altered before Crawford signed it.

### Conclusions of Law

1. I have jurisdiction over the parties and the subject matter. 28 U.S.C. § 1335.

2. Kutner Buick is a holder in due course of the $50,023.00 cashier's check dated February 17, 1982. Under 13 Pa.C.S.A. § 3302(a), a holder in due course is a holder who takes the instrument for value, in good faith, and without notice that it is overdue or has been dishonored or of any defenses against or claims to it on the part of any person.[1]

3. The only relevant defenses that defeat the claim of a holder in due course are fraud in the factum and such illegality as would render the obligation of the party a nullity. 13 Pa.C.S.A. § 3305; *Exchange International Leasing Corp. v. Consolidated Business Forms Co.*, 462 F.Supp. 626, 628 (W.D.Pa.1978).

4. I find no fraud in the factum. The instrument in question is the cashier's check that Crawford sent to Chalfont Industries, not the underlying contract between Crawford and Chalfont. Crawford had knowledge of the character and terms of the cashier's check when he secured it and when he instructed his son to mail it.

5. I find no illegality sufficient to defeat the claim of a holder in due course. Crawford alleges the "Distribution Agreement" is a franchise agreement pursuant to 16 C.F.R. § 436.1 *et seq.* and that under that section, Chalfont was required to make certain disclosures to Crawford which it failed to make. Even assuming, without deciding, that the agreement is a franchise agreement, Chalfont's failure to disclose information does not render the contract void *ab initio*. An agreement between parties which violates a statute is illegal, unenforceable, and void *ab initio* only if the subject of the agreement is

---

**1.** There is no dispute that Kutner Buick paid full value for the cashier's check. In Pennsylvania, the proper test for determining good faith is not one of negligence or a duty to inquire, but rather one of willful dishonesty or actual knowledge. *Valley Bank & Trust Co. v. American Utilities, Inc.*, 415 F.Supp. 298, 301 (E.D.Pa. 1976); *First National Bank of Blairstown v. Goldberg*, 340 Pa. 337, 340, 17 A.2d 377, 378–79 (1941). A person has notice of a fact when he has reason to know that it exists, based on all the facts and circumstances known to him at that time. *Federal Deposit Insurance Corp. v. Barness*, 484 F.Supp. 1134, 1145 (E.D.Pa.1980). Although Jules Kutner was in frequent contact with his son and might have been privy to information about Chalfont's disasterous financial condition and fraudulent practices, there is simply no evidence that he or his employees engaged in willful dishonesty or knew or had reason to know of the particular transactions between Crawford and Chalfont.

specifically proscribed by statute. *See O'Brien v. O'Brien Steel Construction Co.,* 440 Pa. 375, 379–80, 271 A.2d 254, 256 (1970); *Fitzpatrick v. Shay,* 314 Pa.Super. 450, 458–59, 461 A.2d 243, 247–48 (1983); *Shafer v. A.I.T.S., Inc.,* 285 Pa.Super. 490, 494, 428 A.2d 152, 154 (1981). It may be that Crawford as victim of the illegality could unilaterally disavow the contract, but clearly Jerome Kutner, as the perpetrator of the violation, could not use his own dereliction as a defense. Ergo, while Chalfont's failure to disclose may render the contract voidable, the contract does not require any wrongdoing and is therefore not void. (*See* U.C.C. § 3–305 Official Comment, ¶ 5: "If under the local law the effect is to render the obligation of the instrument entirely null and void, the defense may be asserted against a holder in due course. If the effect is merely to render the obligation voidable at the election of the obligor, the defense is cut off.")

6. Kutner Buick is entitled to the proceeds of the $50,023.00 cashier's check because Crawford failed to establish any real defenses to defeat Kutner Buick's claim as a holder in due course.