STATE STREET BANK & TRUST
COMPANY, Plaintiff,

v.

Chester L. STRAWSER, Connie
M. Strawser, Defendants.

Civ. A. No. 1:CV–95–98.

United States District Court,
M.D. Pennsylvania.

Dec. 26, 1995.

Cathleen C. Myers, Victor A. Young, Michael B. Dubin, Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, PA, for plaintiff.

Kathy A. Morrow, New Bloomfield, PA, for defendants.

## MEMORANDUM

CALDWELL, District Judge.

Pending is Plaintiff's motion for summary judgment. We exercise jurisdiction pursuant to 28 U.S.C. § 1332.

## I. BACKGROUND

On December 19, 1986, the Defendants, Chester L. and Connie M. Strawser, executed an Adjustable Rate Note ("the Note") in favor of Homestead Savings Association ("Homestead"), in consideration of and as security for a loan in the amount of $350,000.00. Pursuant to a Security Agreement executed at the same time, the Note was secured by a mortgage on four parcels of real property, and by farming and industrial equipment. The Note is payable in monthly installments with the balance, if any, due January 1, 1997. On March 22, 1993, the Note and Mortgage were assigned to Plaintiff, State Street Bank & Trust Company

("State Street"). The assignment is recorded at Juniata County Record Book No. 175, page 296 and Perry County Record Book No. 735, page 311.

Paragraph 7(B) of the Note defines "default" as follows:

> (B) If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
>
> (B)(1) If a [sic] fail to comply with and perform all of the covenants and obligations in the Letter of Commitment, dated October 8, 1986, which are not specifically addressed in this Note and accompanying Mortgage, I will be in default, unless the default which is the subject of this subparagraph is cured within fifteen (15) days after receipt of written notice thereof is given to me by Note Holder. The non-waiver provisions of paragraph (D) and payment of costs and expenses provisions of paragraph (E), shall apply to this type of default as well.

[Complaint, Exh. A]. In paragraph 7(C), the Note provides that "[i]f I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount."

On October 17, 1994, State Street sent a Notice of Default to Defendants, indicating that if Defendants did not pay the past due principal and interest within thirty days, State Street would exercise the acceleration clause in paragraph 7(C), causing the entire balance and per diem interest to become due immediately. [Complaint, Exh. B]. State Street asserts that it received no response from Defendants as a result of this demand.[1]

On January 23, 1995, State Street instituted this action for breach of contract, alleging that the Strawsers have not made monthly payments since April 1, 1993, and are thus in default under paragraph 7(B) of the Note.

State Street seeks the balance due on the Note, per diem interest, late charges, and attorneys' fees pursuant to paragraph 7(E) of the Note.[2] In their answer, Defendants deny that they are in default and assert an affirmative defense that State Street's claim is barred by the doctrine of illegality because the Note and Mortgage were obtained in violation of 7 P.S. § 311(e).

On November 20, 1995, State Street filed the instant motion for summary judgment. The parties have fully briefed the issues, and the motion is ripe for disposition.

## II. *LAW AND DISCUSSION*

### A. *Standard of Review*

■ Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In reviewing the evidence, facts and inferences must be viewed in the light most favorable to the nonmoving party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 553 (1986). Summary judgment must be entered in favor of the moving party "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party...." *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. at 1356, 89 L.Ed.2d at 552 (citations omitted).

When a moving party has carried his or her burden under Rule 56, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts...." *Id.* (citations omitted). The nonmoving party "must present *affirmative evidence* in order to defeat a properly supported motion for summary judgment," and cannot "simply reassert factually unsupported allegations contained in [the] plead-

---

1. Defendants deny that no response was made, but do not indicate what action they took.

2. Paragraph 7(E) provides that if the Note Holder has exercised the acceleration clause for a default, it "will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees."

ings." *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir.1989) (emphasis in original) (citation omitted). However, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986) (internal citations omitted).

### B. *Breach of Contract*

Because our jurisdiction is premised on diversity of citizenship, we apply the substantive law of Pennsylvania. In this case, we look to the Pennsylvania Commercial Code ("the Code"), which provides that the holder of an instrument has a right to enforce that instrument, subject to certain enumerated exceptions. 13 Pa.C.S.A. §§ 3104, 3301, 3305. Here, the Note is an instrument, as that term is defined in the Code, State Street is a holder of the Note, and, as such, has a right to enforce the Note subject to the limitations of section 3305 of the Code. 13 Pa.C.S.A. § 3301.

■ Additionally, State Street asserts that it is a "holder in due course", and is therefore entitled to enforce the Note free from all defenses that the Strawsers may assert. 13 Pa.C.S.A. § 3302.[3] The Code provides that

"holder in due course" means the holder of an instrument if

(1) the instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and

(2) the holder took the instrument:

.(i) for value; (ii) in good faith; (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series; (iv) without notice that the instrument contains an unauthorized signature or has been altered; (v) without notice of any claim to the instrument described in section 3306 (relating to claims to an instrument); and (vi) without notice that any party has a defense or claim in recoupment described in section 3305(a) (relating to defenses and claims in recoupment).

13 Pa.C.S.A. § 3302(a).

■ The Defendants contend that Plaintiff is not a holder in due course because it had notice of a potential defense under section 3305(a). Section 3305 provides, in pertinent part, that

Except as stated in subsection (b), the right to enforce the obligation of a party to pay an instrument is subject to the following:

(1) a defense of the obligor based on:

(i) infancy of the obligor to the extent it is a defense to a simple contract; (ii) duress, lack of legal capacity or illegality of the transaction which, under other law, nullifies the obligation of the obligor; (iii) fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms; or (iv) discharge of the obligor in insolvency proceedings.

(2) a defense of the obligor stated in another section of this division or a defense of the obligor that would be available if the person entitled to enforce the instrument were enforcing a right to payment under a simple contract.

(3) a claim in recoupment of the obligor against the original payee of the instrument if the claim arose from the transaction that gave rise to the instrument, but the claim of the obligor may be asserted against a transferee of the instrument only to reduce the amount owing on the instrument at the time the action is brought.

13 Pa.C.S.A. § 3305(a). The potential defense raised by the Strawsers is the alleged violation of 7 P.S. § 311(e) by Homestead and its president, Gary Holman.[4] Plaintiff had notice of this potential violation, Defendants argue, as a result of a letter from Defendants' former counsel to Homestead.

---

3. A holder in due course can enforce an instrument free from any defenses, with certain limited exceptions that, as set forth below, are not relevant here. 13 Pa.C.S.A. 3305(b).

4. Defendants' brief is, at best, fragmented. Thus, while we assume this is the basis of their argument, Defendants could be advancing two other defenses that limit a holder in due course's right

[Exh. A to Defs.' Br. in Opp'n to S.J.]. However, even assuming that section 311(e) was violated and is a defense under section 3305 of the Code, Plaintiff is a holder in due course and therefore entitled to enforce the Note.[5]

Admittedly, if State Street had notice of a potential defense, it could not assert the rights of a holder in due course. 13 Pa. C.S.A. § 3302(a)(2)(vi). However, there is no evidence in the record to indicate that State Street had notice of the letter relied on by the Defendants when the assignment occurred on March 22, 1993. The Code provides that

> A person has "notice" of a fact when: (1) he has actual knowledge of it; (2) he has received a notice or notification of it; or (3) from all the facts and circumstances known to him at the time in question he has reason to know that it exists.

13 Pa.C.S.A. § 1201.

Here, the letter is addressed to Homestead. Defendants submitted no evidence that could establish that Plaintiff had actual knowledge of the letter, or that it received timely notification of the contents. Further,

there is nothing in the record to support a finding that State Street had reason to know of a potential violation of 7 P.S. § 311(e), particularly since the Letter of Commitment, Note, Security Agreement, and Appraisals indicate that the appraised value of the collateral exceeded one hundred twenty percent of the indebtedness. [Exh. A, B, E, & F to Pl.'s Motion for S.J.]. We conclude that State Street is a holder in due course.[6]

The evidence produced by Plaintiff establishes that Defendants have not made monthly payments since April, 1993. [Affidavit of Michael R. Mellott]. Although Defendants deny that they are in default, they have failed to submit any evidence of payment to State Street since that time. Defendants have breached their contract and Plaintiff is entitled to summary judgment.

We will issue an appropriate Order.[7]

---

to enforcement. However, neither of those defenses is applicable.

In using the term "illegality" to describe the execution of the Note and Mortgage, Defendants may be attempting to assert a defense under section 3305(a)(1)(ii), which provides a defense for an illegal transaction that nullifies the obligor's promises. However, "an agreement between parties which violates a statute is illegal, unenforceable and void *ab initio* only if the subject of the agreement is specifically proscribed by statute." *Key Bank v. Crawford*, 600 F.Supp. 843, 845–46 (E.D.Pa.1985) (citations omitted), *aff'd*, 781 F.2d 39, 42 (3d Cir.1986). Here, the *subject* of the agreement between Defendants and Homestead was not prohibited by statute. Thus, even assuming the Note and Mortgage were obtained in violation of 7 P.S. § 311(e), the agreement was not "illegal", as that term is used in section 3305(a)(1)(ii). In any event, as set forth *infra*, section 311(e) was not violated.

Defendants also contend that Holman induced them into purchasing bank stock with funds from the executed Note and Mortgage through "fraudulent conduct." Thus, Defendants could be attempting to assert a defense under section 3305(a)(1)(iii), which permits an obligor to avoid enforcement if fraud "induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms." However, that exception applies only to fraud in the factum, as opposed to fraud in the inducement, see *Exchange Intern. Leasing Corp. v. Consolidated Business Forms Co., Inc.*, 462 F.Supp. 626, 628–29 (W.D.Pa.

1978), and here there is no allegation of fraud in the factum.

5. Section 311(e) provides that

> An institution shall not extend credit, directly or indirectly, for the purpose of enabling a customer to acquire or hold shares of stock or capital securities issued by the institution unless all indebtedness incurred for that purpose is secured by other readily marketable collateral with a value not less than one hundred twenty percent of the indebtedness.

7 P.S. § 311(e). Defendants, allegedly at Holman's urging, used some of the proceeds from the loan to purchase shares of stock in Homestead. Apparently, Defendants contend that the market value of the property securing the loan was not one hundred twenty percent of the total indebtedness.

6. In any event, we reject Defendants' argument that the Note and Mortgage were obtained in violation of 7 P.S. § 311(e), and that such violation is a defense under section 3305(a)(2). The record is replete with evidence that the market value of the collateral that secured the Note was "not less than one hundred twenty percent of the indebtedness", as required by section 311(e), [Exhs. A, B, E, & F to Pl.'s Motion for S.J.], and Defendants have not submitted evidence to contradict those values. Thus, even assuming Plaintiff was not a holder in due course, Defendants have not set forth any grounds to deny Plaintiff's right to enforce the Note.

7. In its brief, Plaintiff avers that, as of November 16, 1995, it is entitled to: the balance due on the

Note, $283,166.53; $54,706.40 in interest; per diem interest of $73.73 from November 17, 1995 to the present; and late charges of $3,183.25. Additionally, Plaintiff requests attorneys' fees pursuant to paragraph 7(E) of the Note in the sum of $29,841.22. However, before we enter an award in favor of Plaintiff, we will require Plaintiff to submit documentation for these amounts and permit Defendants an opportunity to object.